IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES E. DENNIS, | : | CIVIL ACTION NO. **4:CV-10-1486** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| RICHARD JENSEN, et al., | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

### I. Background.

On July 16, 2010, Plaintiff, James E. Dennis, currently an inmate at USP-Atwater, California, and formerly an inmate confined at USP-Canaan, Waymart, Pennsylvania, filed, *pro se,* a civil rights action with this Court under *Bivens*[1] and pursuant to 28 U.S.C. § 1331. (Doc. 1). Plaintiff attached exhibits to his Complaint, namely copies of his BOP administrative remedies request and appeals. Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis*. (Doc. 5).

Plaintiff's claims are set forth on three (3) pages of a form § 1331 Complaint along with a 1-paragraph continuance of his statement of claim. (Doc. 1, pp. 1-3).[2] Plaintiff names three (3)

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971). Plaintiff Dennis' instant action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added). This case is a *Bivens* action since Plaintiff seeks monetary damages from federal officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.). In fact, Plaintiff recognizes on the cover page of his present Complaint that it is filed under §1331. (Doc. 1, p. 1).

[2]We have labeled Plaintiff's 1-paragraph continuance of his statement of claim as page 2A to Doc. 1. Also, we have labeled Plaintiff's exhibits to his Complaint as Exs. A-G.

Defendants in his Complaint. Specifically, Defendants are: Richard Jensen, PA-C; Jane Vander Hey-Wright, HCA; and Mary Jane Denuzzia, RN. The three individual Defendants were employed by the Bureau of Prisons ("BOP") at USP-Canaan during the relevant times of this case. (Doc. 1, p. 2).[3]

## II. Allegations of Complaint.

Plaintiff asserts Eighth Amendment denial of medical care claims against Defendants Richard Jensen, PA-C, Jane Vander Hey-Wright, HCA, and Mary Jane Denuzzia, RN. Plaintiff states his claim against the three Defendants as follows:

> On Nov. 27, 2008 I fell from my bunk [at USP-Canaan] and broke my wrist, I was told to go to medical. Once there I seen "Richard Jensen" who checked out my wrist which was swollen (sic) I was given a wrist brace and told to return to my unit and that I would be receiving an X-Ray. I told him I need a cast, but was refused. On Dec. 3rd 2008 I was seen by "Mary Jane Denuzzia" for an X-Ray. I was given one and after that I asked for a cast due to the fact that it was hard to sleep with a broken wrist. I also told her that my wrist brace was stolen in hopes of getting a cast placed on my

---

[3]In his present Complaint (Doc. 1), Plaintiff indicates that he utilized the grievance procedure available through the BOP. However, Plaintiff 's exhibits indicate that he filed an initial grievance, BP-8, with his counselor at USP-Canaan regarding his wrist injury after his November 27, 2008, fall from his bunk. (Doc. 1, Ex. A). Plaintiff contends that his counselor did not respond to his grievance. Plaintiff's attachments show that he then filed an administrative remedy request, BP-9, on September 14, 2009, when he was confined at USP-Atwater, and complained that he did not get proper medical care for his wrist at USP-Canaan. (*Id.*, Exs. B and C). Plaintiff's exhibits show that Plaintiff then exhausted his administrative remedies with respect to his administrative remedy request, BP-9, dated September 14, 2009, he filed when he was confined at USP-Atwater with respect to his present Eighth Amendment claims. (*Id.*, Exs. C-F).

Plaintiff must fully exhaust his administrative remedies with respect to all of his claims prior to filing a civil rights suit. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Spencer v. Zimmerman*, 2009 WL 2994227 (M.D. Pa.).

2

> hand, but she gave me another brace and told me to return to my housing
> unit. The next day at mainline (Lunch) I spoke with "Jayne Vander Hey-Wright",
> I told her that I needed a cast for my hand because it was hard to
> sleep in this condition with a rubber wrist brace on. Ms. Vander Hey-Wright
> told me that she knew that something was wrong with my wrist and that
> I was put in to see the Orthopedic out side doctor. I ask her if I could
> have a cast placed on my hand until then and she said that I would be
> going out soon. By the time I went to see the out side doctor which was
> 3 to 4 months later my wrist had gotten worst. The Orthopedist said
> that I would have what they call a "non-union" that is a bone that is not
> healing properly he also told me that my hand should've been placed
> in a cast and that if I don't get this fixed I will have "Orthritist" if that is how
> you spell it, in my hand, he said the only way to fix this is to have an
> open hand surgery on my wrist. I had the operation and now a year later I
> have little to no movement of my wrist, my left hand can not bend back
> (at all).

(Doc. 1, pp. 2-2A).

As relief, Plaintiff requests monetary damages from Defendants. Specifically, Plaintiff seeks compensatory damages in the amount of $250,000.00 and "to have my wrist fixed so that it can bend again." (*Id.*, p. 3). Plaintiff does not state if he sues Defendants in their individual and/or official capacities.[4] As noted, Plaintiff indicates that he has exhausted all of his available BOP

---

[4] Plaintiff Dennis cannot sue the BOP Defendants for monetary damages in their official capacities. As the Court in *Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998), stated:

> To the extent that the proposed claims seek monetary damages
> against the United States or individual defendants in their official
> capacities, the claims are barred by the doctrine of sovereign
> immunity. *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471,
> 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Plaintiff does
> not allege that the United States has waived its immunity in this
> case. Furthermore, the Supreme Court has held that a *Bivens* action
> may not be brought against a federal agency. *Id.* 510 U.S. at 484-86,
> 114 S. Ct. at 1005-06.

*See also Douglas v. BOP,* Civil NO. 08-0140 (M.D. Pa.).

administrative remedies with respect to his claims.

We now screen Plaintiff's pleading as we are obliged to do under the PLRA.

### III. PLRA.

As stated, the Plaintiff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 5). The Prison Litigation Reform Act of 1995[5] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[6] Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

---

Also, since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages in the amount of $250,000 should be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[6]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts. The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account. (Docs. 5, 6 and 7).

4

**IV. *Bivens* Standard.**

As stated, Plaintiff's instant case is a § 1331 civil rights action under *Bivens*.[7] In *Naranjo v. Martinez*, 2009 WL 4268598, *6, the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a *Bivens* claim. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3 (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.
>
> Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."

---

[7]The Third Circuit in *Banks v. Roberts*, 2007 WL 3096585, * 1, n. 1, 251 Fed. Appx. 774 (3d Cir. 10-19-07) (Non-Precedential) noted that, "[a] '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials. This constitutional tort theory was set out in *Bivens* . . . ." *See also Naranjo v. Martinez*, 2009 WL 4268598, *1, n.1 (M.D. Pa.)(*Bivens* is the shorthand given to claims made against a federal agent for violations of a federal right, including constitutional rights.") (citation omitted).

> *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

Further, a *Bivens* action is analogous to a civil rights action under 42 U.S.C. §1983. *Id.*; *Reynolds v. BOP*, 2010 WL 744127, *3 (E.D. Pa.). *See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.")(citation omitted).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

## V. Motion to Dismiss Standard.

The Court in *Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009), set forth the Motion to Dismiss standard of review, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. –, 127 S. Ct. 1955 (2007), and as refined in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), as follows:

> The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. *Neitzke; Scheuer v. Rhodes*, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, ----, --- L.Ed.2d ----, ----, 2009 WL 1361536 (May 18, 2009) (specifically applying *Twombly* analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See *California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394

6

F.3d 126, 143 (3d Cir.2004) citing *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 556, citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 232, quoting *Twombly*, 550 U.S. at 556 n. 3.

## VI. Discussion.

*A*s stated, Plaintiff asserts Eighth Amendment denial of medical care claims against Defendants Richard Jensen, PA-C, Jane Vander Hey-Wright, HCA, and Mary Jane Denuzzia, RN. We do not find that Plaintiff has sufficiently stated Eighth Amendment denial of medical care claims against Defendants Richard Jensen, PA-C, Jane Vander Hey-Wright, HCA, and Mary Jane Denuzzia, RN, with respect to the treatment for his November 27, 2008 broken wrist. We find that Plaintiff's allegations amount only to negligence claims against all three Defendants regarding their failure to provide Plaintiff with a cast as opposed to a wrist brace.

In *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.), the Court stated that:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.), the Court stated:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191, 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347).

With these principles in mind, we now discuss Plaintiff's allegations against each Defendant.

*1. Defendant Jensen, PA-C*[8]

As quoted above, Plaintiff simply avers that on November 27, 2008, he fell from his bunk and broke his wrist. He alleges that after his fall, he went to the medical department and was timely examined by Defendant Jensen. He avers that Defendant Jensen gave him a wrist brace and told him he would receive an x-ray. Plaintiff states that he told Defendant Jensen he needed a cast for his wrist, and that Jensen refused to give him a cast. Plaintiff admits that he received an x-ray as Defendant Jensen told him he would get, on December 3, 2008. We find no further allegations as against Defendant Jensen.

Simply because Plaintiff felt he broke his wrist immediately after his fall and requested Defendant Jensen to provide him with a cast as opposed to a wrist brace until an x-ray could be taken, does not amount to an Eighth Amendment denial of medical care claim. Defendant Jensen is not alleged to have deliberately indifferent to Plaintiff's injury and the facts merely reveal that until an x-ray was performed, Defendant Jensen only gave Plaintiff a wrist brace. Plaintiff does not allege that afer Defendant Jensen gave him the wrist brace and while he was waiting a few days for the x-ray he told Jensen that he experienced continuing pain and that Jensen denied him treatment for any such pain.

In *Mimms v. U.N.I.C.O.R.*, 2010 WL 2747470, *2 (3d Cir.), the Court stated:

> In order to state a claim under the Eighth Amendment for denial of medical care, Mimms must show that defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Farmer,* 511 U.S. at 834-35 Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or

---

[8]We find that "PA" refers to Physician Assistant.

intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104-05. Mimms stated that he broke his left hand at Lewisburg camp. He was given an x-ray and was treated with a splint and medication for pain. He stated that he continued to experience pain and numbness and did not have any follow-up treatment. The District Court properly dismissed this claim because Mimms failed to clarify which defendant he faults for these events. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Furthermore, he did not satisfy the standard for deliberate indifference. According to Mimms' own allegations, he received immediate medical care, and he did not specify what treatment, if any, he was denied. Although he claimed that he experienced continuing pain, the District Court properly noted that he did not allege that the pain was severe or that he informed prison officials about the pain and was denied treatment.

Moreover, we find that at most Plaintiff's allegations against Defendant Jensen amount to only negligence, and that Plaintiff's allegations do not rise to an Eighth Amendment claim. Thus, based on *Mimms*, we will recommend that Defendant Jensen be dismissed from this action.

*2. Defendant Denuzzia, RN*

Plaintiff avers that on December 3, 2008, he was seen by Defendant Denuzzia for an x-ray and that after his x-ray, he asked this Defendant for a cast for his wrist since he was having trouble sleeping with his wrist. Plaintiff also states that he told Defendant Denuzzia that his wrist brace was stolen, when it seemingly was not, and that Defendant Denuzzia gave him another brace, namely "a rubber wrist brace".[9] Plaintiff then states that Defendant Denuzzia directed him to return to his

---

[9]See Doc. 1, Ex. F. The Court can consider Plaintiff 's exhibits. The Court in *White v. Probation Office*, 2008 WL 3837045, *1, n. 3 (M.D. Pa.), noted:
> "[t]he court may consider documents of record and exhibits submitted by the parties when evaluating a motion to dismiss. *See Tilbury v. Aames Home Loan,* 199 F. App'x 122, 125 (3d Cir.2006) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384-85 n. 2 (3d Cir.1994)) (observing that a court may consider exhibits submitted by the parties when ruling on a motion to dismiss)."

housing unit. We find no further allegations in the Complaint against Defendant Denuzzia. However, in his Ex. A, Doc. 1, Plaintiff also states as follows with respect to Defendant Denuzzia:

> After the X-ray, Ms. Mary Jane Denuzzia, (R.N.), informed that an
> MRI was being scheduled and placed a rubber band like material
> on my risk (sic) [wrist] for support, I asked Ms. Denuzzia to place a cast
> in place of the Rubber band like material because the material
> was loose and did not provide any support that a cast may provide.

Plaintiff does not allege that afer Defendant Denuzzia gave him another wrist brace and while he was waiting for the MRI, he told Denuzzia that he experienced continuing pain and that Denuzzia denied him treatment for any such pain. Moreover, we find that at most Plaintiff's allegations against Defendant Denuzzia amount to only negligence, and that Plaintiff's allegations against this Defendant do not state an Eighth Amendment claim. As the Court stated in *Robinson v. U.S.*, 2010 WL 1254277, *14 (M.D. Pa.):

> This [Eighth Amendment ] test "affords considerable latitude to prison
> medical authorities in the diagnosis and treatment of the medical problems of
> inmate patients. Courts will 'disavow any attempt to second guess the propriety
> or adequacy of a particular course of treatment ... which remains a question of
> sound professional judgment." *Little v. Lycoming County,* 912 F.Supp. 809,
> 815 (M.D.Pa.1996) (citing *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d
> 754, 762 (3d Cir.1979), quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th
> Cir.1977)). When an inmate is provided with medical care and the dispute is
> over the adequacy of that care, an Eighth Amendment claim does not
> exist. *Nottingham v. Peoria,* 709 F.Supp. 542, 547 (M.D.Pa.1988).
> Mere disagreement as to the proper medical treatment does not support an
> Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious
> acts or omissions can violate the standard. Medical negligence alone cannot
> result in an Eighth Amendment violation, nor can any disagreements

---

*See also Kuniskas v. Walsh*, 2010 WL 1390870, *3 (M.D. Pa.); *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.).

11

over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir.1990).

Thus, based on *Mimms and Robinson*, we will recommend that Defendant Denuzzia be dismissed from this action.

*3. Defendant Hey-Wright, HSA*[10]

Plaintiff avers that on December 4, 2008, after his x-ray, he told Defendant Hey-Wright "[t]hat I needed a cast for my hand because it was hard to sleep in this condition with a rubber wrist brace on." (Doc. 1, p. 2A). Plaintiff avers that Defendant Hey-Wright directed that he be seen by an outside orthopaedic specialist for his wrist. When Plaintiff asked Defendant Hey-Wright if he could have a cast on his wrist until his orthopaedic consult, he alleges that she told him he would be going to the consult soon. However, Plaintiff states that he did not see the orthopedic specialist until 3 to 4 months later and that during this time his "wrist had gotten worse." (*Id*.). Plaintiff also avers that when he was examined by the orthopaedic specialist, the doctor told Plaintiff that his hand should have been placed in a cast.

According to Plaintiff's own exhibit, Doc. 1, Ex. D, namely the November 28, 2008 Response from the BOP Regional Director to Plaintiff's administrative remedy appeal of the decision of the Warden at USP-Atwater to his BP-9 request, the treatment Plaintiff received for his November 27, 2008 wrist injury was as follows:

> A review of your medical records reveals you were provided an injury assessment on December 1, 2008, by the Physician Assistant, when you reportedly fell out of the bottom bunk, landing on your left hand and wrist. A radiology request for x-ray of the wrist was ordered,

---

[10]We find that "HSA" refers to Health Service Administrator.

> revealing a left hand scaphoid (navicular) bone injury. A wrist brace was issued to you, however, you later stated it was stolen in your housing unit. You were issued another wrist brace. On December 3, 2008, the PA submitted an order for an orthopedic referral and a Magnetic Resonance Imaging of the left wrist, at which time you were scheduled for both appointments.
>
> \*\*\*\*\*\*
>
> On February 23, 2009, you were examined and evaluated by the Orthopedic Surgeon, and his recommendations was wrist/hand surgery on the non-union scaphoid bone that was not an acute injury. A surgical consultation was scheduled. On April 24, 2009, the Orthopedic Surgeon performed a comprehensive examination in preparation of surgery. X-rays were taken, which confirmed scaphoid non-union with presence of cyst formation. You were advised of the treatment plan, in which an open reduction internal fixation and bond grafting will be performed. On May 26, 2009, you received surgery of the left scaphoid non-union. The Surgeon noted you tolerated the procedure well. You returned to the institution for recovery and prescribed Oxycodone/Acetaminophen (Percocet) for pain management. On May 28, 2009, you reported to the PA that you had a fever, however, your body temperature was taken, revealing you had a temperature of 97.5 Fahrenheit, and your skin was not warm to the touch. Although there were no signs of a fever you were prescribed Acetaminophen. On May 29, 2009, staff renewed the prescription medication for Percocet. On June 1, 2009, an administrative note indicated that you used all the Percocet medications, and was replaced with Tylenol #3 for pain management. On June 2, 2009, Ibuprofen was added to your prescription pain regimen, however, on June 3, 2009, you complained of upset stomach from taking Ibuprofen. The PA changed your pain medication to Naproxen. On June 11, 2009, you again complained of chronic pain after your hand surgery 16 days before. You requested renewal of Tylenol #3 and this was granted.

(Doc. 1, Ex. D).

The Response to Plaintiff's final administrative remedy appeal revealed as follows:

> Relevant portions of your medical record have been reviewed which reveal you underwent surgical repair of a left scaphoid non union on May 26, 2009. On November 20, 2009, you had a follow-up visit

> with the orthopedic surgeon which revealed your wrist was healed and
> that you had good range of motion. Recommendation was for
> activity as tolerated. On February 11, 2010, you underwent an
> x-ray of your wrist which was negative and showed no evidence of
> orthopedic hardware failure. The record reflects you are receiving
> medical care and treatment in accordance with Bureau policy.

(Doc. 1, Ex. G).

Thus, Plaintiff's own exhibits show that he had his wrist surgically repaired and that his wrist healed properly and he had good range of motion. (*Id*.). Based on Plaintiff's allegations and his exhibits, as well as the above quoted case law, we do not find that Plaintiff has stated a cognizable Eighth Amendment claim against Defendant Hey-Wright. Plaintiff does not allege that after Defendant Hey-Wright told him on December 4, 2008, she referred him to see an orthopedic specialist until the time he was examined by the specialist on February 23, 2009, about 2 ½ months later, he told Hey-Wright that he experienced continuing pain and that his wrist was getting worse. Nor does Plaintiff allege that Hey-Wright denied him treatment for any such pain or worsening condition. Moreover, we find that at most, Plaintiff's allegations against Defendant Hey-Wright, as with his allegations against the other two Defendants, amount to only negligence. *See Robinson, supra*.

Thus, based on *Mimms and Robinson*, we will recommend that Defendant Hey-Wright be dismissed from this action.

In short, we do not find that Plaintiff has stated the above described elements to establish an Eighth Amendment denial of medical care claim against any Defendant. Plaintiff has not stated that any Defendant was deliberately indifferent to his serious medical needs, and his records only show that Plaintiff disputed the opinions of Defendants that a wrist brace was appropriate.

Moreover, Plaintiff's own exhibits belie his allegations that after the wrist surgery, he has little to no movement in his wrist. (Doc. 1, Ex. G).

Thus, we will recommend that Plaintiff's Eighth Amendment denial of medical care claims against all three Defendants be dismissed.

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that Plaintiff's Eighth Amendment denial of medical care claims regarding his November 27, 2008 wrist injury against Defendants Richard Jensen, PA-C, Jane Vander Hey-Wright, HCA, and Mary Jane Denuzzia, RN be dismissed with prejudice.[11] Moreover, it is recommended that Plaintiff's *in forma pauperis* motion (Doc. 5) be granted solely for the purpose of filing this action. Finally, it is recommended that Plaintiff's case be closed.

        **s/ Thomas M. Blewitt**
        **THOMAS M. BLEWITT**
        **United States Magistrate Judge**

**Dated: August 23, 2010**

---

[11] Pursuant to our above discussion and in light of Plaintiff's exhibits, we find futility of any amendment of Plaintiff's stated Eighth Amendment denial of medical care claims against Defendants Richard Jensen, PA-C, Jane Vander Hey-Wright, HCA, and Mary Jane Denuzzia, RN, and we shall not recommend Plaintiff be granted leave to amend his pleading with respect to these claims. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004); *Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, *2 (M.D. PA.).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES E. DENNIS, | : | CIVIL ACTION NO. **4:CV-10-1486** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| RICHARD JENSEN, et al., | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 23, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                             s/ Thomas M. Blewitt
                                             **THOMAS M. BLEWITT**
                                             **United States Magistrate Judge**

**Dated: August 23, 2010**